UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOURIYA SIMMAPHILAVONG,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM et al.,<br><br>Respondents. | CASE NO. 2:26-cv-00458-JHC<br><br>ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Petitioner Souriya Simmaphilavong's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

# II

## BACKGROUND

Petitioner is a 45-year-old non-U.S. citizen. Dkt. # 5 at 2; Dkt. # 1 at 2. He is a refugee from the Lao People's Democratic Republic (Laos) but does not have proof of Laos citizenship

ORDER - 1

and says he should be considered stateless. Dkt. # 5 at 2; Dkt. # 1 at 2. Petitioner was brought to the U.S. in 1980, when he was about four years old. Dkt. # 5 at 2; Dkt. # 1 at 2.

Although Petitioner became a legal permanent resident soon after entry into the U.S., following convictions of assault and unlawful possession of a weapon as a teenager, Petitioner was ordered removed under Section 241(a)(2)(A)(iii) of the Immigration and Nationality Act (INA). Dkt. # 5 at 2; Dkt. # 6-1; Dkt. # 1 at 2. That order of removal became final on February 27, 1998. Dkt. # 5 at 2; Dkt. # 6-3 at 2. After serving his sentence, Petitioner was held in detention by immigration enforcement for 30 days. Dkt. # 5 at 2; Dkt. # 1 at 2. But because Laos would not issue travel documents, Petitioner was released on an Order of Supervision (OSUP) on June 21, 2002.[1] Dkt. # 5 at 2; Dkt. # 6-1 at 8; Dkt. # 6-3 at 6; Dkt. # 1 at 2.

For over 20 years, Petitioner complied with his OSUP and checked in with immigration officials at first monthly, and eventually as the OSUP was updated, annually. Dkt. # 1 at 2; *see* Dkt. # 6-1 at 9; Dkt. # 6-2 at 3-4; Dkt. # 6-5 at 2, 7; Dkt. # 6-6 at 2. Before his detention, he resided in Oregon with his U.S.-citizen spouse who at the time of this order is pregnant with their third child. Dkt. # 1 at 2-3. His other two minor children are also U.S. citizens. *Id*. Over the years, under his OSUP, Petitioner has attempted without success to request travel documents from the Laos embassy. Dkt. # 7 at 4; Dkt. # 6-5 at 3; Dkt. # 6-5 at 7.

On or about January 5, 2026, Petitioner's OSUP was revoked. Dkt. # 6-7 at 2; Dkt. # 6-2 at 3. The Notice of Revocation of Release (the Notice) states that there are "changed circumstances" because "[a] determination was made that there is now a significant likelihood of

---

[1] Although Petitioner was convicted of violent crimes, ICE determined that his "criminal history [was] not very extensive" and labeled him a "model inmate" with "no derogatory information as to institutional disciplinary programs or infractions while incarcerated." Dkt. # 6-3 at 8. While incarcerated, Petitioner got his GED, took self-help classes, and became a tutor with a program to reach out to troubled youth to steer them away from crime. *Id*. Based on this information, the government determined he was not a flight risk or a danger to society, and eligible for release under *Zadvydas v. Davis* 533 U.S. 678, 693 (2001). Dkt. # 6-3 at 8.

ORDER - 2

[Petitioner's] removal from the U.S. in the foreseeable future." Dkt. # 6-7 at 2. The Notice was not provided to Petitioner until February 2, 2026, when he voluntarily reported to Immigration and Customs Enforcement (ICE) for his annual check-in, and at which time he was detained and then provided the Notice and informed of his upcoming removal. Dkt. # 6-7 at 3; Dkt. # 1 at 2. After he was detained, the government says he was provided an "informal interview" pursuant to 8 C.F.R § 241.4(l) and 8 C.F.R. § 241.13, but Petitioner says this never occurred. Dkt. # 5 at 3; Dkt. # 6-8 at 2; Dkt. # 1 at 8.

Respondents say travel documents were issued by Laos on January 30, 2025. Dkt. # 5 at 3. But they have not provided copies of any such documents to the Court. *See generally* Dkt. # 6. And Petitioner indicates he is unaware of any such documents. Dkt. # 1 at 13; Dkt. # 7 at 3-4. On February 23, 2026, Petitioner was served a Notice of Imminent Removal Pursuant to 8 C.F.R. § 241.1(g)(4) with removal planned for an unspecified day in March 2026. Dkt. # 7-2 at 2. Petitioner has been, and continues to be, detained at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington. Dkt. # 5 at 3.

### III
### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner invokes the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" The right to due process "applies to all 'persons'

ORDER - 3

within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[2] Still, as

---

[2] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id*. at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id*. And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*.; see *Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2-3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7-8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2-4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

Respondents acknowledge "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property" except in special circumstances. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Respondents argue that because ICE's actions adhered to agency regulations in re-detaining Petitioner, the detention was lawful.[3] Dkt. # 4 at 7; *see* 8 C.F.R. §§ 241.4, 241.13. But adherence is contested. Petitioner says he was not provided an "informal interview" as required by regulation and raises questions as to the basis for revocation, as the Notice was "oddly nondescript" and issued almost a month before travel documents were allegedly received. *See* Dkt. # 1 at 8; Dkt. # 7 at 4-5; *see also Truong v. Noem*, No. 25-CV-2597-JES-MMP, 2025 WL 2988357, at *3-4 (S.D. Cal. Oct. 22, 2025) (finding government violated 8 C.F.R. §§ 241.4 and § 241.13 when a substantially similar notice was unconstitutionally vague and provided after re-detention). But even assuming ICE's actions adhered to the regulations, "Petitioner does not claim to be entitled to a hearing consistent with a particular statute: he argues that the Due Process Clause requires it. This line of the Respondents' reasoning therefore does not address Petitioner's concern and cannot carry the day." *E.A. T.-B.*, 795 F. Supp. 3d at 1323 (citing *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020)). Thus the Court considers Petitioner's alleged Due Process violation under the *Mathews* test.[4]

A.    *Mathews* Factors

    1.    Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of

---

[3] Respondents also say Petitioner is not currently subject to indefinite detention. Dkt. # 4 at 4-5. As Petitioner points out, this is not argued in the Petition, and therefore the Court does not conduct a *Zadvydas*, 533 U.S. 678 analysis and makes no decision on the application of *Tran v. Bondi*, No. 25-cv-01897-JLR, 2025 WL 3140462 (W.D. Wash. Nov. 10, 2025) to this case. Dkt. # 7 at 8.

[4] Respondents do not meaningfully engage with the *Mathews* factors. *See* Dkt. # 4 at 5-7.

ORDER - 5

private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377-81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same).

Petitioner has a liberty interest in being free from detention, which he is being denied in that he has been detained for a month. The interest is only strengthened by the government's decision to release Petitioner. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release.") (citing *Morrissey*, 408 U.S. at 482). His release allowed him to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthening his interest in being free from detention. *Pablo Sequen v. Albarran*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon*, 459 U.S. at 32-33) (cleaned up).

Petitioner has lived in this country for 46 years. Dkt. # 5 at 2; Dkt. # 1 at 2. He was granted legal permanent residence, and but for bad decisions as a teenager he would have continued to live here without incident. Dkt. # 5 at 2; Dkt. # 1 at 2. Instead, Petitioner served his sentence and proceeded to spend over two decades following the conditions of his OSUP, which was twice reaffirmed. Dkt. # 5 at 2; Dkt. # 1 at 2; Dkt. ## 6-5, 6-6; *see Makuey v. Scott*, No.

2:25-CV-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) ("Petitioner's liberty interest was reaffirmed each time a new Order of Supervision was issued").

Laos would not accept Petitioner, and he has no avenue to pursue U.S. citizenship or challenge his removal order, which is now nearly 30 years old. *See* Dkt. # 1 at 2-3. And yet, Petitioner has made a life for himself. He is married to a U.S. citizen, has two (soon to be three) U.S. citizen children, and takes care of his aging U.S. mother and father-in-law. *Id*; Dkt. # 7-4 at 2. Because of Petitioner's detention, he is already missing his wife's "high risk" pregnancy and he might miss the birth of his child. Dkt. # 7 at 6; Dkt. # 7-3 at 2. In revoking Petitioner's release, the government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause. *See Morrissey*, 408 U.S. 471 at 482. Accordingly, the first *Mathews* factor favors Petitioner.

  2.  Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

It is undisputed that Petitioner did not receive the revocation notice until he was already detained. Dkt. # 6-7 at 3; Dkt. # 1 at 2; *see* Dkt. # 6-2 at 3-4 (February 2, 2026: "forms I-205 [warrant for removal] and I-294 [notice of removal] have been prepared to be served later"). Whether Petitioner received a meaningful opportunity to be heard is contested. Respondents say they provided Petitioner an "informal interview" pursuant to 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 after his detention. Dkt. # 5 at 3; Dkt. # 6-8 at 2. Petitioner says this never occurred. Dkt. # 1 at 8. Regardless, even assuming a post-detention interview took place Petitioner argues it did not satisfy Due Process and a pre-detention hearing was required. Dkt. # 7 at 3; *see Zinermon*, 494 U.S. at 127.

ORDER - 7

As Respondents acknowledge, this Court, and other jurisdictions, have held that "it is undeniable that the risk of an erroneous deprivation would decrease if Petitioner had received notice of the basis for his re-detention and an opportunity to be heard before a neutral decisionmaker prior to his arrest." *Kumar*, 2025 WL 2677089, at * 3; *E.A. T.-B.*, 795 F. Supp. 3d at 1322 (same); *Ramirez Tesara*, 800 F. Supp. 3d at 1137 (same); *Maklad v. Murray*, No. 1:25-CV-00946 JLT SAB, 2025 WL 2299376, at *8 (E.D. Cal. Aug. 8, 2025) (same); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (same).

Respondents argue "pre-deprivation hearings are not mandated by the Due Process Clause where the rationale for the detention is to effectuate the order of removal." Dkt. # 4 at 6-7. But even when there is a final removal order, this court has held otherwise. *See Makuey v. Scott*, No. 2:25-CV-02135-DGE-BAT, 2025 WL 3640900 (W.D. Wash. Dec. 16, 2025) (finding Due Process right even when there was an order of removal and government claimed Petitioner would be "expeditiously removed"); *Ledesma Gonzalez*, 2025 WL 2841574, at *1, * 8 (finding Due Process right even when Petitioner subject to a final removal order and government provided no reason for re-detention). In both cases—just as here—there was a final removal order, the non-citizens had been generally complying with orders, and when they voluntarily reported to ICE for a check-in they were instead detained without notice or a hearing. *See Makuey*, at * 1-2; *Ledesma Gonzalez*, at *1. It is hard to see how a pattern of gotcha-type revocations of release, when no notice or a pre-detention hearing is provided, can in any way avoid the risk of an erroneous deprivation of non-citizens' interest.

Also, typically, the "changed circumstances" are not an alleged imminent removal but a concern over the non-citizen being a flight risk or danger to the community, but the risk of erroneous deprivation still applies. This case is like *Truong*, 2025 WL 2988357, in which a Laos refugee permanent resident was convicted of a crime, subject to a removal order and detention,

and then released on an OSUP, only to be re-detained almost a decade later without notice or a pre-detention hearing. *Id.* at * 1. In *Truong*, there was a Due Process violation, in part, because the court found notice of re-detention "to be conclusory and lack any requisite specificity to support a finding that Truong's re-detention was lawful." *Id.* at 4.

Similarly, here, the government issued the Notice of Revocation on January 5, 2026, almost a month before travel documents were even alleged to have been received.[5] Dkt. # 5. The government did not provide this Notice to Petitioner until February 2, 2026, *after* he was already re-detained. And still, neither he, his attorney, nor this Court has seen the alleged travel documents—notably, Petitioner was apparently not born in a hospital and does not have a Laos birth certificate or other proof of citizenship there. Dkt. # 6-7 at 2; Dkt. # 6-2 at 3; Dkt. # 7 at 6; Dkt. # 7-1 at 3.

At best, Petitioner has had one informal interview with an ICE officer after he was detained, which is contested, and another on February 23, 2026 while detained, but Petitioner has never had an attorney present nor has he had the opportunity to raise his concerns over being "stateless" or explain the extenuating circumstances of his wife's high risk pregnancy that might

---

[5] Because of the constitutional violation, the Court need not make a factual finding as to the contested travel documents. *See* Dkt. # 7 at 6; *see Truong*, 2025 WL 2988357, at *4-5 (declining to consider secured travel documents and an anticipated removal in an *Zadvydas* analysis when release was not properly revoked). Still, the Court encourages the government in future habeas petitions to provide the Court with such travel documents if they plan to rely on them. In this jurisdiction, the government has made "demonstrably false" claims to have travel documents when re-detaining non-citizens only for it later to be revealed no such documents exist. *See Makuey v. Scott*, No. 2:25-CV-02135-DGE-BAT, 2025 WL 3640900, at *5 (W.D. Wash. Dec. 16, 2025); *see also Zimran v. Noem*, No. 5:25-CV-03143-JFW-KES, 2026 WL 161805, at *10 (C.D. Cal. Jan. 14, 2026), report and recommendation adopted, No. 5:25-CV-03143-JFW-KES, 2026 WL 167179 (C.D. Cal. Jan. 21, 2026) ("If [the ICE officer's] assertion that the warrant [of removal] was served on [petitioner] is based on review of some paperwork, it is unclear why Respondents have not produced that underlying paperwork."). If Respondents are relying on declarations from ICE officers who base their knowledge on reviewing "various records and systems," it is unclear why that record cannot be provided to the Court. *See* Dkt. # 5.

ORDER - 9

be considered in allowing Petitioner to remain out of detention.[6]  *See Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025) (considering that "neither [petitioner] nor his immigration attorney have actually had an opportunity to speak to any immigration officials about the basis for his detention, let alone to a judge").  The second factor favors Petitioner.

   3.  Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  There is a "heightened government interest in the immigration detention context."  *Rodriguez Diaz*, 53 F.4th at 1206.

The government fails to assert any specific interest that would counsel against the Court finding a due process violation.  *See* Dkt. # 4 at 6-7.  The Court still acknowledges that the government likely has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community."  *Zadvydas,* 533 U.S. at 690.

It is uncontested that since his release in 2002 Petitioner has no criminal history and has fully complied with his OSUP.[7]  Dkt. # 1 at 2-3; *see generally* Dkt. # 5; Dkt. ## 6-2; 6-4; 6-5; 6-6; 6-7.  While the government's interest in ensuring Petitioner's appearance at immigration

---

[6] This may be a charitable interpretation of the February 23, 2026 event when Petitioner and about 15-20 other foreign nationals from various countries were brought into a room while detained at NWIPC and given Notices of Imminent Removal.  *See* Dkt. 7-1 at 3.  This is especially so since Petitioner's notice was undated and the ICE office could not provide documents or answer any questions.  *Id.*

[7] Petitioner's ICE record states that on February 2, 2026, he was charged with an aggravated felony.  Dkt. # 6-2 at 3.  This contradicts the rest of the record and is not once mentioned in Respondents' briefing.  *See generally* Dkt. ## 4, 5, 6.  It is unclear and deeply concerning to the Court how a charge with potentially drastic consequences to Petitioner's future would be placed on his record, presumably in error.

ORDER - 10

proceedings is valid, it is unclear why the government would believe Petitioner would not appear when he had for over 20 years. Respondent has not provided an explanation, and none appear obvious on its face, and so this *Mathews* factor also favors Petitioner. *E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing on [release conditions] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue").

\* \* \*

In sum, all three *Mathews* factors favor Petitioner. The government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).[8]

### IV
### CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be IMMEDIATELY released from custody subject to the same conditions of release that governed before he was re-detained. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice of his alleged imminent removal.

---

[8] For this reason, the Court need not address Petitioner's argument under the Administrative Procedure Act.

1     The Clerk is directed to send uncertified copies of this Order to all counsel of record and
2 to any party appearing pro se at said party's last known address.
3     Dated this 3rd day of March, 2026.

*[signature: John H. Chun]*

John H. Chun
United States District Judge

ORDER - 12